UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEOBARDO BELTRAN,<br><br>  Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>  Defendant. | CASE NO.: ED CV 04-493-PJW<br><br>MEMORANDUM OPINION AND ORDER |

I.

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of the decision by Defendant Social Security Administration ("Agency") denying Supplemental Security Income ("SSI") benefits. Alternatively, he asks the Court to remand the case to the Agency for further proceedings. For the reasons discussed below, the Agency's decision is AFFIRMED and the case is DISMISSED WITH PREJUDICE.

II.

SUMMARY OF FACTS AND PROCEEDINGS

A. <u>Plaintiff's Personal and Work History</u>

Plaintiff was born on March 20, 1966, and was 37 years-old at the time of the administrative hearing. (Administrative Record, "AR" 12.) He has a history of substance abuse. (AR 194). He used heroin from age 16 until being imprisoned in 1992. (AR 194.) He admitted to using cocaine, PCP, amphetamines, and trying "Pruno" while in prison. (AR 194.) In August 2001, Plaintiff admitted to recently using heroin, cocaine, methamphetamines, and alcohol, but stated that he stopped "two and a half to three months ago." (AR 196.)

Plaintiff's criminal history includes convictions for the sale of heroin, absconding from probation (three times), multiple counts of robbery with rape, being under the influence of controlled substances, assault, and vandalism.[1] (AR 194.) Plaintiff has a seventh-grade education.[2] (AR 12.) He testified that he understands, speaks, reads, and writes English. (AR 227.)

He has, apparently, never worked in his life. He previously applied for SSI on January 7, 1991. (AR 11.) The Agency granted his application, finding that he suffered from organic brain syndrome, stemming from being struck in the head in a fight in 1990. (AR 11.) His benefits were discontinued in January 1993, however, when he was convicted of second-degree robbery. Plaintiff was eventually released

---

[1] Plaintiff was also charged with child molestation, but stated that the charges were dropped. (AR 194.)

[2] At different times, Plaintiff offered different versions of how far he had gone in school. (AR 197 (sixth grade); AR 70 (seventh grade), AR 195 (ninth grade)).

from prison in November 2000, after serving approximately eight years of a twelve-year sentence. (AR 194.) Thereafter, he lived in a drug rehabilitation facility for a short time. (AR 237-38.) At the time of the hearing, Plaintiff was living with his aunt and his grandmother. (AR 235.)

Plaintiff's activities included going to Bally's gym, where he exercised "a lot." (AR 247.) He described doing "push-ups" and "dips" and using both free weights and machines for up to one hour at a time. (AR 248-49.) The ALJ noted at the hearing that Plaintiff appeared "very strong" and "in real good muscular shape." (AR 250.)

Plaintiff also testified that he assisted around the house, helping his grandmother by taking out the trash. (AR 257.) Plaintiff's aunt testified that Plaintiff swept the "backyard and sometimes the front yard." (AR 263.) Plaintiff also mowed the lawn with a gas lawn mower. (AR 269.)

Plaintiff was examined on January 23, 2001, by Gul Ibrahim, M.D., a staff psychiatrist at the Parole Outpatient Clinic. (AR 194-95.) At the time of this evaluation, Plaintiff was taking 100 mg Thorazine, 20 mg of Paxil, and 10 mg of Zyprexa. (AR 194.) He reported having no side effects from the medications. On his mental status examination, he was alert, verbal, coherent, and oriented. Testing did not show any abnormalities. Dr. Ibrahim diagnosed depression not otherwise specified, psychosis, opioid dependence, and antisocial personality disorder. (AR 195.) He assessed Plaintiff's Global Assessment of Functioning ("GAF") at 65.[3] (AR 195.)

---

[3] The GAF score reflects the clinician's judgment of the overall functioning of the patient. GAF scores range from a high of 100 (superior functioning) to 1 (persistent danger of severely hurting

After applying for SSI benefits on April 12, 2001, Plaintiff underwent a consultive evaluation on August 7, 2001, by Reynaldo Abejuela, M.D., at the request of the Agency. (AR 196-200.) Plaintiff drove himself to the evaluation. (AR 196.) No unusual behavior was noted during the examination. Plaintiff stated that he had been hearing voices and feeling depressed. (AR 196.) There was no evidence of severe depression or anxiety. Plaintiff knew the month, date, and year, and was able to perform simple calculations. (AR 198-99.) Dr. Abejuela diagnosed Plaintiff with substance-induced psychosis with mood disorder. Based on Plaintiff's history and mental status examination, Dr. Abejuela concluded that Plaintiff's mental functioning was not severely impaired. (AR 200.) He further noted that Plaintiff's drug rehabilitation program was helping him stay sober. Dr. Abejuela concluded that Plaintiff could follow simple and complex job instructions so long as he was not under the influence of drugs or alcohol. (AR 200.) Dr. Abejuela opined that "[Plaintiff's] psychiatric prognosis is fair with continuous abstinence from alcohol and street drugs." (AR 200.)

Plaintiff was also seen by Mary Poonan, M.D., a psychiatrist at the Parole Outpatient Clinic, on May 3, 2002 and September 9, 2002. (AR 213.) During the second examination, Plaintiff admitted to lying to Dr. Poonan on the first visit about taking his medication. (AR

---

self or others, or persistent inability to maintain hygiene, or serious suicidal act with clear expectation of death). *See American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders*, 32 (4th ed. 1994). A GAF score between 61 and 70 indicates "mild symptoms, or some difficulty in social, occupational, or school functioning (e.g. occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

213.) Dr. Poonan diagnosed Plaintiff with psychosis disorder not otherwise specified, and prescribed Geodon.[4] On September 16, 2002, Plaintiff reported feeling better on Geodon with no more depression or paranoia. (AR 214.) Dr. Poonan noted that, though Plaintiff took his medication irregularly, he was not suffering from paranoia and his condition was "improving." (AR 215.)

Plaintiff's treating psychologist, S.K. Simmons, Ph.D., completed a Work Capacity Evaluation (Mental) Form on March 20, 2002. (AR 209-10.) Dr. Simmons checked boxes indicating that Plaintiff had "marked" limitations in the following areas of functioning: ability to carry out very short and simple instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule and maintain regular attendance; ability to sustain an ordinary routine without special supervision; ability to make simple work-related decisions; ability to accept instructions and to respond appropriately to criticism from supervisors; ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and ability to respond appropriately to changes in the work setting. (AR 210.)

B.   Administrative Background

1.   The Administrative Hearing

Plaintiff protectively filed an application for SSI on April 12, 2001, which was denied initially and upon reconsideration. (AR 11.) He then requested a hearing before an Administrative Law Judge ("ALJ"), which was granted. (AR 27.)

---

[4] "Geodon" is an anti-psychotic drug used to treat schizophrenia, bipolar disorder, and agitation accompanying these conditions. *See* http://www.pfizer.com/download/uspi_geodon.pdf.

Plaintiff appeared at the hearing with counsel and testified, as did a vocational expert, and Plaintiff's aunt. (AR 219-77.) The vocational expert testified that Plaintiff had no prior work history. (AR 272.) The ALJ then posed the following hypothetical:

> Assume an individual of the same age, education, and work history as the claimant. Able to perform work at the medium exertional level, that is lifting and carrying 25 pounds frequently and 50 occasionally. Sitting, standing and walking at least six hours in an eight hour day. But mentally limited to unskilled work by which I mean work at SVP one and two with no interpersonal contact with the public. Assume the limitations of [H]ypothetical A[,] would there be work that such an individual could do in the national economy?

The vocational expert responded that this hypothetical person could work as a hand packager, day worker, or house-cleaner, of which there were a significant number of jobs in the national and local economy. (AR 273-74.)

The ALJ then proposed Hypothetical B to the vocational expert:

> Please assume in addition to all limitations already stated the further mental limitation to no close or frequent interpersonal contact with co-workers or the public – strike that. Co-workers or supervisors. Would your answer to [H]ypothetical B be any different than to [H]ypothetical A?

(AR 274.)

The vocational expert responded that his answer would remain the same. (*See* AR 274.)

2.  <u>The ALJ's Decision</u>

On September 15, 2003, the ALJ issued his decision analyzing Plaintiff's claims under the Agency's five-step sequential evaluation process. The ALJ concluded that Plaintiff had not been under a "disability," as defined in the Social Security Act, at any time from his protective filing date of April 12, 2001, through the date of this decision, and, therefore, was not entitled to SSI. (*See* AR 12-22.)

At step one of the sequential evaluation process, the ALJ concluded that Plaintiff had never had a job, and had not engaged in substantial gainful activity since April 12, 2001. (AR 12.) At step two, the ALJ determined that Plaintiff had the following severe impairments: status post-assault to the head, with right parietal subarachnoid hemorrhage, and fracture of the left tripod and orbit; mild obesity (69 inches tall, 220 pounds, body mass index 34); polysubstance abuse (heroin, cocaine, PCP, marijuana, and alcohol), in remission by dubious report; organic brain disorder; psychotic disorder, not otherwise specified; and anti-social personality disorder. (AR 14.)

At step three, the ALJ found that Plaintiff's medically determinable impairments, alone or in combination, did not meet or equal any of the listings. The ALJ concluded that Plaintiff had the residual functional capacity to perform work activity at the medium exertional level, with the following non-exertional limitations: "mentally limited to unskilled work with no close or frequent interpersonal contact with supervisors, or the public." (AR 15.)

At step four, the ALJ concluded that Plaintiff had never worked, therefore, there was no job to which he could return to. At step five, the ALJ determined that Plaintiff could perform numerous jobs

existing in significant numbers in the local and national economy. As a result, the ALJ concluded that Plaintiff was not under a "disability," within the meaning of the Social Security Act. (AR 21.) On September 15, 2003, the ALJ issued a decision denying Plaintiff's claim. (AR 8.) Plaintiff sought review, but the Appeals Council affirmed the ALJ's decision. (AR 4.) Thereafter, Plaintiff filed suit in this Court challenging the Agency's denial of his claim for benefits.

## III.
## ANALYSIS

A. <u>Standard of Review</u>

"Disability" under the Agency regulations is defined as the inability to perform any substantial gainful activity due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A)(2002). The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)(quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)). Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Court must uphold the

ALJ's conclusion even if the evidence in the record "is susceptible to more than one rational interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Indeed, if the record evidence can reasonably support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In this appeal, Plaintiff raises three claims: (1) the ALJ failed to apply *res judicata* from the previous finding that Plaintiff was disabled; (2) the ALJ erred in rejecting Plaintiff's credibility; and (3) the ALJ erred in failing to give a complete hypothetical to the vocational expert. For the reasons set forth below, the Court finds that the ALJ's decision is supported by substantial evidence and is not based on legal error. For that reason, it will be affirmed.

B.  *Res Judicata* does not Apply

Plaintiff had previously been awarded SSI in 1991, after suffering a brain injury in 1990. (AR 11.) Plaintiff's benefits were terminated in 1993, when he was convicted of second degree robbery and sentenced to prison. (AR 11.) *See* 20 C.F.R. § 416.1325 (2004) (providing for termination of benefits for prison inmates). Plaintiff contends that--despite his eight-year incarceration and resultant termination of benefits--he is entitled to a continuing presumption of disability based on the Agency's prior determination that he was disabled. This contention is incorrect.

Under the law governing social security, after benefits have been terminated for a period of 12 months, *res judicata* does not apply to a subsequent application. *Warren v. Bowen*, 804 F.2d 1120, 1121 (9th Cir. 1987), as amended, 817 F.2d 63 (9th Cir. 1987). Thus, a claimant

who applies for benefits after the twelve-month period has lapsed is not entitled to a continuing presumption of disability. *Id.* For this reason, Plaintiff's claim that *res judicata* applies is without merit.

Plaintiff cites *Salzman v. Apfel*, 125 F.Supp.2d 1014, 1019 (C.D. Cal. 2000), for the proposition that there is a continuing presumption of disability. *Salzman* is not on point. In *Salzman*, the claimant had been receiving SSI for approximately five years, when it was cut off after the Agency determined that his disability was based in part on substance abuse. Plaintiff appealed the ALJ's decision to the district court and the decision was overturned. The court remanded for a new evaluation, instructing the Agency to evaluate whether the Plaintiff would still be disabled if he stopped using drugs. *Id.* at 1017. The court there noted that there was a continuing presumption of disability *while a claimant was receiving SSI benefits*. *Id.* at 1019.

*Salzman's* holding of a presumption of disability while a claimant is receiving benefits is easily distinguishable from the instant case. In Plaintiff's case, SSI benefits were terminated for over eight years prior to Plaintiff's current application for benefits. *Res judicata* does not apply once benefits have been terminated, and a determination of disability is based on a new SSI application. *Warren*, 804 F.2d at 1121. Additionally, as set forth in *Warren*, there is no presumption of continuing disability for SSI recipients whose benefits have been terminated for non-medical reasons. *Id.* This is an additional reason why Plaintiff's claim fails here.

Plaintiff also cites *Mendoza v. Apfel,* 88 F.Supp.2d 1108, 1113 (C.D. Cal. 2000) and "cases cited therein" to support his claim that a continuing presumption of disability applies. In *Mendoza*, the

claimant filed an application for SSI benefits, alleging disability due to complications from diabetes.  The claimant had previously worked in an auto shop doing "heavy" work.  The ALJ granted limited benefits for a closed period, but denied them after that time had expired, finding that the claimant's condition had improved.  The district court overturned the ALJ's decision in that case, holding that a termination of benefits due to an improvement in a claimant's health must be supported by substantial evidence.  *Id.* at 1115.  Thus, *Mendoza* does not apply here, either.[5]

Accordingly, the ALJ properly rejected Plaintiff's claim that he was entitled to a presumption of disability.  It will not be disturbed.

C.   <u>The ALJ Properly Evaluated Plaintiff's Credibility</u>

Plaintiff contends that the ALJ erred by discrediting his testimony and allegations regarding his alleged impairments.  (AR 18,21.)  This claim is also without merit.

The ALJ is responsible for determining credibility.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)("Credibility determinations are the province of the ALJ.").  As long as the ALJ's finding is reasonable and supported by substantial evidence, even where a contrary finding may

---

[5]  In asserting *Mendoza*, Plaintiff necessarily relies on a line of cases which are outdated and, in one case, overruled.  *Mendoza* relies on *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983), which relies on *Patti v. Schweiker*, 669 F.2d 582 (9th Cir. 1982), to conclude that a continuing presumption of disability exists until substantial evidence to the contrary has been established.  The *Patti* holding was specifically superseded by statute and overruled by *Warren* for the proposition Plaintiff now wishes to assert.  *See Warren*, 804 F.2d at 1121; *see also* 42 U.S.C.A. § 1382(a)(5) (1983 Supp. 1986). Accordingly, Plaintiff's claim is unsupported by current law.

11

also be reasonable, it is not the Court's role to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Like a trial judge or jury at a trial, an ALJ may consider many factors when assessing a claimant's credibility, including: his reputation for truthfulness, inconsistencies in either his testimony or between his testimony and conduct, his daily activities, work record, and testimony from physicians and others concerning the nature, severity, and effect of the alleged symptoms. *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002).

In his filing with the Agency, Plaintiff alleged that he was unable to work because he was "mentally ill, forgets everything, can't stay in one place, doesn't follow orders, and under medication." (AR 64.) The ALJ noted, among other things, that Plaintiff's allegations were inconsistent with the opinions and diagnoses contained in the medical reports submitted by Drs. Abejuela, Ibrahim, and Poonan. (AR 18.) The medical evidence established that, when Plaintiff took his medication, his condition was, essentially, controlled. The medical record also established, however, that Plaintiff often failed to take his medication as prescribed. Furthermore, he lied to Dr. Poonan about his compliance in taking his prescribed medications. (AR 19, 213.)

In addition, Plaintiff had an extensive criminal record, which undermined his credibility. Plaintiff had been convicted of multiple counts of robbery, rape, assault, vandalism, and being under the influence of controlled substances. (AR 194.) Furthermore, the ALJ noted numerous false statements by Plaintiff in his testimony. (AR 19.) For example, Plaintiff testified that he did not know how to drive. (AR 236-37.) Plaintiff's aunt directly contradicted this

testimony, however.  (AR 268.)  In addition, Plaintiff reported to Dr. Abejuela that he had driven himself to his appointment with Dr. Abejuela.  (AR 196.)  Further, Plaintiff falsely testified that he had not consumed alcohol since leaving rehab, which was also directly contradicted by his aunt.  (AR 246, 269-71.)

The ALJ also noted that the Plaintiff's demeanor as a witness was "terrible."  (AR 19.)  A review of the transcript reflects that Plaintiff was transparently untruthful in his testimony and, when not outright lying, evaded nearly every question posed.  (*See* AR 223 (oath), 224-26 (testimony about education before and in prison), 228-29 (work in prison), 230-33 (criminal record), 243 (testimony that he had not used illegal drugs since his release from prison)).  The ALJ reasonably concluded that Plaintiff had "said a number of things during his testimony which are obviously not true."  (AR 276.)  The ALJ's finding that Plaintiff was not credible is supported by substantial evidence in the record and will not be disturbed.

D.   The ALJ Posed a Complete Hypothetical Question to the Vocational Expert

Plaintiff alleges in his final claim that the ALJ failed to pose a complete hypothetical question to the vocational expert.  Plaintiff argues that the hypothetical question was incomplete because an incorrect residual functional capacity was used, the hypothetical wrongly presumed Plaintiff was "literate" in English, and it did not account for the fact that Plaintiff testified that he "could not finish what he started."  For the reasons discussed below, the Court finds that these arguments are without merit.

Hypothetical questions posed to a vocational expert must set forth all the of the limitations and restrictions of a particular

claimant.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  The ALJ, however, is not required to include limitations for which there is no evidence.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001)(holding ALJ not bound to accept as true the restrictions set forth in hypothetical if they were not supported by substantial evidence).

Plaintiff asserts that an erroneous residual functional capacity was used.  Plaintiff, however, failed to state why the residual functional capacity given in the hypothetical to the vocational expert was incorrect, *i.e.*, whether it ignored physical or mental limitations.  Nonetheless, the residual functional capacity used in the first hypothetical from the ALJ assumed an individual able to perform work at the medium exertional level, able to lift 25 pounds frequently and 50 pounds occasionally, and sitting, standing, and walking at least six hours in an eight hour day.  The ALJ further stated that this individual would be limited to unskilled labor.  (AR 273.)  Plaintiff testified that he worked out at Bally's gym frequently, mowed the lawn, and did house work for his aunt and grandmother.  (AR 247, 257.)  At the hearing, the ALJ described Plaintiff as "very strong" and "in real good muscular shape."  (AR 250.)  Thus, it appears the ALJ did not fail to include any physical limitations in the hypothetical.

As to mental or emotional limitations, it appears that the ALJ included all of Plaintiff's limitations as well.  Plaintiff testified that he "didn't want to be around too many people."  (AR 248.)  The ALJ specifically considered this limitation in the second hypothetical, where he asked the vocational expert to assume the same individual as in the first hypothetical, but with "no close or

frequent interpersonal contact with co-workers or supervisors." (AR 274.) Plaintiff's other claimed limitations, *i.e.*, depression, were controlled by medication or the ALJ found they did not exist. As such, the ALJ was not required to include in the hypothetical these limitations.

Plaintiff also claims that the ALJ erred in finding that he was literate in English. This claim is specious. Plaintiff has repeatedly demonstrated his ability to both read and write English. In addition, he testified that he could read, write, and understand English. (AR 227.) Thus, there is substantial evidence to support the ALJ's finding that Plaintiff could read and write. It necessarily follows, then, that the ALJ was not required to include Plaintiff's alleged illiteracy in a hypothetical question to the vocational expert. *Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988) (holding that hypothetical question need not include a claimant's subjective impairments if the ALJ makes specific findings that claimant is not credible). For these reasons, the ALJ's failure to include in the hypothetical to the vocational expert that Plaintiff was not "literate" in English was not error.

Finally, Plaintiff claims that the hypothetical posed to the vocational expert was incomplete because it did not account for the fact that Plaintiff testified that he "could not finish what he started." But, as the Court has pointed out, the ALJ correctly concluded that Plaintiff was not credible and, therefore, the ALJ was not required to include Plaintiff's incredible claims in the hypothetical. *Id*. at 540. Accordingly, this claim is without merit.

IV.

CONCLUSION

For the reasons set forth above, this Court finds that the Agency's findings are supported by substantial evidence and are free from material legal error.  Therefore, the Court affirms the decision of the Agency and enters summary judgment in favor of the Agency and against Plaintiff.

IT IS SO ORDERED.

DATED:    August  26  , 2005.


                                            /s/
                                       PATRICK J. WALSH
                                       UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\BELTRAN, L 493\Memo_Opinion.wpd